NO. 07-06-0099-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

OCTOBER 9, 2007
_____

CHARLES RAY GIBSON, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 121ST DISTRICT COURT OF TERRY COUNTY;

NO. 5273; HONORABLE KELLY G. MOORE, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant, Charles Ray Gibson, Jr., appeals his conviction for possession of a controlled substance (cocaine) and sentence of 99 years incarceration in the Institutional Division of the Texas Department of Criminal Justice. We reverse.

Background

On October 1, 2004 at around 11:15 p.m., Rose Waitman called the Brownfield Police Department out of concern that her daughter (C.W.), who was 15 years old at the

time, had not returned home from a high school football game. Officer Carrillo was dispatched to the Waitman residence. Rose told Carrillo that C.W. may be in a blue 1989 "Pontiac Oldsmobile (sic)" and she gave him the license plate number of the vehicle. Rose requested that Carrillo find her daughter and bring her home.

At approximately 11:45 p.m., Carrillo spotted a vehicle that matched the description of the vehicle given by Waitman. Carrillo could not identify its occupants or even how many occupants were in the vehicle. Carrillo pulled behind the vehicle, activated his emergency lights, and followed the vehicle to effectuate the stop. At no time after Carrillo spotted the vehicle did he observe the driver violate any traffic laws. After the vehicle stopped, Carrillo spoke with the driver, who he identified as appellant, told him that he had been stopped "for the juvenile," and asked appellant to exit the vehicle. After appellant exited the vehicle, Carrillo asked him for his driver's license and proof of insurance. Another officer, who was assisting Carrillo, removed C.W. from the vehicle. Appellant told Carrillo that he did not have a license or proof of insurance. Carrillo ran a license inquiry through dispatch and was able to verify that appellant did not have a valid driver's license. As a result, Carrillo placed appellant under arrest. Following appellant's arrest, the vehicle was searched incident to the arrest. Cocaine and marijuana were discovered in or next to the vehicle.

Appellant filed a pre-trial Motion to Suppress the drugs contending that they were discovered as a result of an illegal search and seizure. A hearing was held on the motion with Carrillo being the only testifying witness. Carrillo testified that he was aware that appellant did not have a driver's license based on a past encounter with him, however, he

2

expressly stated that he did not pull the vehicle over for this reason. Rather, Carrillo testified that he stopped the vehicle because it matched the description given by C.W.'s mother, who was concerned about her daughter's welfare. The trial court denied the Motion to Suppress the evidence.

At trial, C.W. testified regarding the events of October 1, 2004. She testified that she and appellant left the football game before it ended. Appellant stopped by a house for a brief period while C.W. waited in the car. Appellant took C.W. back to the football game, but the game had ended and C.W. could not find the person that was to give her a ride home. As a result, appellant agreed to take C.W. home. As appellant was attempting to give C.W. a ride home, Carrillo pulled appellant over. As Carrillo approached the vehicle, appellant pulled drugs out of his pocket, handed them to C.W., and told her to "chunk them out the window." However, because another officer approached the passenger's side window at the same time that Carrillo approached the driver's side, C.W. testified that she laid the drugs beside the seat.

Also, at trial, C.W.'s mother, Rose, testified that she called the police to look for her daughter because she was "concerned" when she did not come home with the people that she went to the game with. Rose had been informed that C.W. was with appellant, but she "didn't want her in the car with him."

Carrillo testified that he went and spoke with Rose and that she was very concerned about her daughter. He testified that Rose told him that C.W. had left the football game around 10:20 with appellant. Carrillo spotted appellant's vehicle driving in the direction of

3

C.W.'s home at 11:48. After Carrillo stopped the vehicle, he testified that he approached the driver, identified himself, and advised the driver that he was being stopped "for the juvenile." At the same time, another officer made contact with C.W. on the passenger's side of the vehicle. Carrillo asked appellant to step out of the vehicle and for his driver's license and proof of insurance. When appellant failed to produce these documents, Carrillo called in a driver's license check that indicated that appellant's driver's license had expired in 1993. As a result, Carrillo arrested appellant. After appellant was placed under arrest, his vehicle was searched and cocaine and marijuana were found on the floorboard of the front passenger's area.

At the close of evidence, the court took up the issue of the jury charge. The court's proposed charge included an instruction that an accomplice witness's testimony must be corroborated. The State objected to the inclusion of this instruction on the basis that the evidence was insufficient to establish that C.W. was an accomplice, but the court overruled the objection. Appellant then objected to the charge not including an instruction under Texas Code of Criminal Procedure article 38.23, which was overruled by the court. See TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005).[1]

The jury returned a verdict finding appellant guilty of possession of a controlled substance, cocaine, in an amount more than four grams but less than 200 grams. The indictment included enhancement allegations of two prior felony convictions to which appellant pled true. The jury heard the punishment evidence and assessed a sentence of

---

[1] Further reference to provisions of the Texas Code of Criminal Procedure will be by reference to "article __."

4

incarceration in the Institutional Division of the Texas Department of Criminal Justice for a period of 99 years.  Appellant filed a Motion for New Trial, which was overruled by operation of law.

Appellant presents four issues on appeal. Appellant's first issue contends that the trial court erred in denying appellant's Motion to Suppress.  By his second issue, appellant contends that the evidence was insufficient to corroborate the testimony of C.W., who appellant contends was an accomplice.  Appellant's third issue contends that the trial court erred in failing to include an instruction under article 38.23 in the jury charge.  Finally, by his fourth issue, appellant contends that the evidence was legally insufficient to support his conviction.  We will address only appellant's first and fourth issues.  See Tex. R. App. P. 47.1.

## Legality of the Stop

By his first issue, appellant contends that the trial court erred in denying his Motion to Suppress the cocaine found by the police when they searched his vehicle incident to arrest because the initial stop of his vehicle was illegal in that it was not supported by reasonable suspicion. The State contends that the initial stop of appellant was justified by the community caretaking function of the officers.

When reviewing a motion to suppress, we are to give great deference to a trial court's determination of historical facts and on mixed questions of law and fact that require an evaluation of credibility and demeanor.  Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).  However, mixed questions of law and fact not turning on an

5

evaluation of credibility and demeanor are reviewed *de novo*.  Id.  See also Villareal v. State, 935 S.W.2d 134, 139 (Tex.Crim.App. 1996) (McCormick, P.J., concurring) (if trial court "is not in appreciably better position" than the appellate court in deciding an issue, the appellate court may independently determine the issue while affording deference to the trial court's finding on subsidiary factual questions).  Where the facts relating to a motion to suppress are undisputed and the trial court's ruling does not turn on the credibility of the witnesses, an appellate court reviews an order overruling the motion *de novo*.  Johnson v. State, 146 S.W.3d 719, 721 (Tex.App.–Texarkana 2004, no pet.).

While not all encounters with the police implicate the Fourth Amendment's protection against unreasonable seizures, stopping an automobile and detaining its occupants constitutes a seizure, even though the purpose of the seizure is limited and the resulting detention brief.  Del. v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); Corbin v. State, 85 S.W.3d 272, 276 (Tex.Crim.App. 2002).  Under the Fourth Amendment, a seizure must be objectively reasonable in light of the particular circumstances of the case.  Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Corbin, 85 S.W.3d at 276.  Assessing the reasonableness of a search or seizure requires a balancing of the public interest and the individual's right to be free from arbitrary interference by law enforcement.  Prouse, 440 U.S. at 654; Corbin, 85 S.W.3d at 276.  A seizure based on reasonable suspicion or probable cause will generally be reasonable.  Whren v. United States, 517 U.S. 806, 818, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); Corbin, 85 S.W.3d at 276.  However, even without reasonable suspicion or probable cause that an offense has been committed, a police officer may reasonably seize

an individual through the exercise of his community caretaking function. Corbin, 85 S.W.3d at 276; Wright v. State, 7 S.W.3d 148, 151-52 (Tex.Crim.App. 1999). For a seizure to be justified by the community caretaking function, it must have been primarily motivated by the need to assist and the officer's belief that the need exists must have been reasonable. See Corbin, 85 S.W.3d at 277.

As part of a police officer's duty to "serve and protect," an officer "may stop and assist an individual whom a reasonable person, given the totality of the circumstances, would believe is in need of help." Wright, 7 S.W.3d at 151. However, the community caretaking function is "totally divorced" from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. Corbin, 85 S.W.3d at 276-77. Thus, for the exercise of the community caretaking function to justify a seizure, its primary purpose must be for the welfare of the individual in need of assistance. Id. at 277.

If it is determined that a seizure was primarily motivated to fulfill the community caretaking function, it must then be determined whether the officer's belief that the person needed help was reasonable. Corbin, 85 S.W.3d at 277; Wright, 7 S.W.3d at 151-52. In evaluating the reasonableness of the officer's belief that help was needed, courts may look to four non-exclusive factors (hereafter, "the Wright factors"): (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether the individual was alone and/or had access to assistance other than that offered by the officer; and (4) to what extent the individual, if not assisted, presented a danger to himself or others. Id. In reviewing these factors, the nature and level of distress exhibited is entitled to the greatest weight. Corbin, 85 S.W.3d at 277.

7

In the present case, it is undisputed that Carrillo lacked reasonable suspicion or probable cause to stop appellant's vehicle. Carrillo provided no testimony that he was aware of or suspected that appellant was involved in the commission of a crime at the time Carrillo stopped his vehicle. Further, Carrillo specifically testified that he did not observe appellant violate any traffic laws prior to the stop. Therefore, appellant contends that the initial stop was illegal and that any evidence discovered as a result of the stop was tainted by the illegality of the stop and the trial court erred in allowing this evidence over appellant's objection.

The State, however, contends that the stop of appellant's vehicle was legal because the stop was effectuated in furtherance of the officer's community caretaking function.[2] The record reflects that C.W.'s mother contacted the police when C.W. failed to return home from the football game at the expected time. Carrillo testified that his "biggest concern" in stopping appellant's vehicle was "[t]he child's safety being that she was a juvenile and he was in his 30's (sic)." However, Carrillo further testified that he was aware that appellant did not have a valid driver's license, based on prior encounters with appellant. Therefore, we conclude that this testimony raised a fact question as to the primary motivation for the stop. This fact issue was impliedly resolved by the trial court in favor of the valid exercise of the community caretaking function. In reviewing a trial court's ruling on a motion to suppress, we may not sit as a second trier of fact determining the

---

[2] In analysis of the trial court's ruling on the Motion to Suppress, we will assume, without deciding, that the community caretaking function justifies a seizure of an individual other than the individual believed to be in need of assistance. But see Wright, 7 S.W.3d at 151-52 (may stop and assist the individual exhibiting distress and believed to be in need of assistance).

8

credibility and demeanor of witnesses. See State v. Ross, 32 S.W.3d 853, 858 (Tex.Crim.App. 2000). Thus, we must accept the trial court's implied determination that Carrillo effectuated the stop of appellant based on a primary motivation to fulfill his community caretaking function.[3]

For a seizure to be justified as an exercise of the community caretaking function, an officer's subjective belief that the seizure is necessary to render assistance to a person in need must be shown to have been objectively reasonable. Id. In assessing the reasonableness of the officer's belief, we look to the four Wright factors.

The first, and most important, Wright factor is the nature and level of the distress exhibited by the individual. Id. In the present case, Rose testified that she was "concerned" about her daughter not returning home from the football game at the designated time and in the designated manner. Rose also testified that she told the police that she did not want her daughter in a car with appellant, but she provided no further elaboration as to why she did not want her daughter with appellant. The only evidence of the nature and level of C.W.'s distress at the time that appellant was stopped was that C.W. was no more than one and a half hours late and that, for some unstated reason,

---

[3] While Carrillo specifically testified that he did not stop appellant's vehicle based on his knowledge that appellant did not have a driver's license, we agree with appellant that, at trial, this testimony was sufficient to raise a fact question as to the true motivation for the stop. Therefore, we agree with appellant's third issue that the trial court erred in failing to submit an instruction in the jury charge in accordance with article 38.23. See Murphy v. State, 640 S.W.2d 297, 299 (Tex.Crim.App. 1982) (jury instruction required when evidence raises a fact question regarding the legality of the search or seizure). However, because we conclude that the trial court erred in denying appellant's Motion to Suppress, the trial court's erroneous failure to instruct the jury in accordance with article 38.23 is rendered moot.

9

Rose did not want C.W. in a vehicle with appellant. We conclude that this evidence is insufficient to establish that C.W. exhibited a nature and level of distress sufficient to independently justify the stop of appellant as an objectively reasonable exercise of the community caretaking function.

However, while the first Wright factor is entitled to the greatest weight, it is not always dispositive. Id. The three remaining factors help to give more definition to the first factor and may reveal that a particular level of distress is more or less serious depending on the presence or absence of these factors. Id. In looking at the second factor, the location of the individual, the record reflects that appellant was stopped a couple of houses before he reached C.W.'s home and that Carrillo was aware of the proximity of the stop to C.W.'s home as a result of his having recently spoken with Rose at the house. The proximity of the stop to C.W.'s home and the reasonable inference that appellant was in the process of taking C.W. home mitigates against C.W. being in sufficient distress to justify the stop. The third factor asks whether the individual in distress was alone and/or had access to assistance other than that offered by the officer. As to the initial stop, Carrillo testified that he could not identify any individuals in appellant's vehicle nor could he identify the number of individuals in the vehicle. Therefore, this factor could not support the initial stop. Finally, the fourth factor, the extent to which the individual, if not assisted, posed a danger to himself or others, weighs against the stop. The record provides no evidence of how C.W. was placed in danger by getting a ride home from appellant. To the extent that the fourth factor is to be applied to appellant, there is no evidence that appellant was driving erratically or in a manner that would pose a danger to himself or to others on

10

the roadways.  Also, there was no evidence that appellant posed a threat to C.W, rather, the only evidence was that Rose did not want C.W. with appellant.

Considering the Wright factors in light of the totality of the circumstances, we conclude that the evidence failed to establish that the stop of appellant's vehicle was an objectively reasonable exercise of the community caretaking function.  As the State does not dispute that the stop was not supported by probable cause or reasonable suspicion and because we conclude that the stop was not shown to have been a valid exercise of the community caretaking function, we conclude that the stop was illegal and, therefore, the cocaine which was subsequently found was the fruit of the illegal stop.  See Crosby v. State, 750 S.W.2d 768, 780 (Tex.Crim.App. 1987).  Therefore, we conclude that the trial court erred in denying appellant's Motion to Suppress this evidence.

Harm

Having found error in the denial of appellant's Motion to Suppress, we must also conduct a harm analysis to determine whether the error calls for reversal of the judgment. TEX. R. APP. P. 44.2.  The harm analysis for the erroneous admission of evidence obtained in violation of the Fourth Amendment is Rule 44.2(a)'s constitutional standard.  Hernandez v. State, 60 S.W.3d 106, 108 (Tex.Crim.App. 2001).  Accordingly, we must reverse the trial court's judgment, unless we determine beyond a reasonable doubt that the error did not contribute to appellant's conviction or punishment.  TEX. R. APP. P. 44.2(a).  The question is whether the trial court's denial of Appellant's Motion to Suppress and its admission of the evidence were harmless beyond a reasonable doubt.  See Williams v. State, 958 S.W.2d

11

186, 194 (Tex.Crim.App. 1997). In applying the "harmless error" test, we ask whether there is a "reasonable possibility" that the error might have contributed to the conviction. Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998), cert. denied, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999).

In the present case, the evidence obtained as a result of the illegal stop formed the basis of appellant's conviction. After carefully reviewing the record and performing the required harm analysis under Texas Rule of Appellate Procedure 44.2(a), we are unable to determine beyond a reasonable doubt that the erroneous admission of the cocaine did not contribute to appellant's conviction. Therefore, because the trial court's error in denying appellant's Motion to Suppress was harmful to appellant, we will reverse the judgment.

## Legal Sufficiency

By his fourth issue, appellant contends that the evidence was legally insufficient to support his conviction. Appellant's argument concerning the sufficiency of the evidence is that there were insufficient links to establish that appellant possessed the narcotics if C.W.'s testimony had been properly excluded as insufficiently corroborated accomplice testimony.

However, even were we to determine that C.W. was an accomplice and her testimony was not sufficiently corroborated, an issue we need not address in this opinion due to our resolution of appellant's challenge of the trial court's denial of his Motion to Suppress, see TEX. R. APP. P. 47.1, we would have to consider her testimony in

12

determining whether the evidence was legally sufficient.  See Green v. State, 893 S.W.2d 536, 540 (Tex.Crim.App. 1995) (when sufficiency of evidence is challenged following a jury trial, appellate courts consider all of the evidence, whether properly or improperly admitted).  While not expressly challenged by his legal sufficiency issue, we must also consider the cocaine that we have previously concluded was improperly admitted in assessing the legal sufficiency of the evidence.  See id.

Considering all of the evidence, whether properly or improperly admitted, in the light most favorable to the verdict, we conclude that the evidence was sufficient to establish that appellant intentionally and knowingly possessed a controlled substance, cocaine, in an amount of four grams or more, but less than 200 grams.  We overrule appellant's legal sufficiency challenge.

### Conclusion

Having determined that the trial court committed reversible error in denying appellant's Motion to Suppress, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

Mackey K. Hancock
Justice

Publish.

Pirtle, J., concurring.

13