NO. 07-07-0471-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 25, 2008
_____

KURT T. WELLS,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE COUNTY COURT AT LAW NO. 2 OF LUBBOCK COUNTY;

NO. 2006-498,230; HON. DRUE FARMER, PRESIDING
_____

*Opinion*
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Kurt T. Wells (appellant) appeals his conviction for driving while intoxicated. Via three issues, he contends that the trial court erred by allowing in unauthenticated hearsay evidence that violated his Sixth Amendment right to confront witnesses. The State concedes that the admission of the evidence violated the aforementioned constitutional right; nonetheless, it believes the error to be harmless. We disagree and reverse the judgment.

The evidence in question consisted of a written report or resolution purportedly issued by the American Optometric Association acknowledging the "scientific validity and reliability of the HGN test as a field sobriety test when administered by properly trained and certified police officers . . . ." The State offered this resolution after the appellant purported to "question the validity of" that test. Furthermore, it did so through its sole witness, the arresting officer. Yet, nothing of record indicates that the arresting officer was a member of the Optometric Association, was an optometrist, had any expertise in optometry, knew the origins or authenticity of the exhibit, or knew of the tests or studies, if any, undertaken by the Association in support of its alleged opinion. Despite that, the State had the officer identify the item in front of the jury, after which the prosecutor personally read aloud its content. The timing of this event was quite interesting for not only was it one of the last pieces of evidence tendered by the State before opting to rest but it was also some of the last testimony heard by the jury before the trial court recessed for the day. Yet, that was not the last time the State alluded to the resolution.

During its closing argument, the State again mentioned the exhibit. In effort to sway the jury and gain a conviction, the prosecutor suggested that defense counsel was "going to get up here, and he's going to holler and yell and scream about this piece of paper, and all this does is tell you that HGN . . . HGN is a scientific, reliable, valid, tool for judging sobriety." Appellant's legitimate objection to the report was also used by the State, during its closing, as a means of discrediting defense counsel. This happened when the prosecutor directed the jurors' attention to the supposed inconsistency in defense counsel attempting to admit appellant's medical records while simultaneously attempting to exclude the Association's inadmissible resolution.

2

As previously mentioned, the State concedes that admission of the report violated appellant's Sixth Amendment right to confront his accusers. Thus, we are obligated to assess whether the error was harmful. And, since the error in question is one of constitutional magnitude, then we must apply the test incorporated in Rule 44.2(a) of the Texas Rules of Appellate Procedure. That test obligates us to reverse the conviction unless we conclude, beyond reasonable doubt, that the error did not contribute to the outcome. TEX. R. APP. P. 44.2(a); *Gibson v. State,* 253 S.W.3d 709, 716-17(Tex. App.– Amarillo 2007, pet. ref'd). Were it possible for us to interview the jurors to accurately assess whether it affected them, our job would be easy. But, that we cannot do. Instead, we look at the nature of the wrong, its egregiousness, its repetition, its timing, the quantum of evidence illustrating guilt, and like indicia to gauge the possibility and extent, if any, of its impact. *See Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007) (describing the factors to consider).

With that said, we now turn to the record before us and immediately note that the HGN test and its validity was a focal point of the trial. The prosecutor stated as much to the trial court in response to appellant's objection. And, while that test was not the only one administered by the arresting officer, it was one of the ones used by him in assessing appellant's loss of mental or physical ability due to the ingestion of alcohol, that is, intoxication.[1] And, a substantive amount of time was spent at trial in discussing that test and its administration on appellant.

---

[1] It is of import to understand that the State was attempting to prove appellant guilty of driving while intoxicated by showing that his mental faculties and physical abilities had been impaired through the ingestion of alcohol. It was not attempting to prove intoxication via blood alcohol levels. Thus, the validity of the tests administered, the manner in which they were administered, and appellant's performance on those tests was critical.

Next, the timing of the State's effort cannot be ignored. Again, it waited until it was about to finish its evidentiary presentation to tender the document. Additionally, that instant happened to coincide with the end of the day's proceedings. So, it can be said that the Association's alleged resolution about the validity of the HGN test was received at a most opportune time for the State, that being at a time when it had the greatest potential to ring uninterrupted in the jurors' ears.

That the State redirected the jury's attention to the resolution during its closing argument merits comment as well. This served not only to remind the jurors of the inadmissible evidence but also to renew its prior impact. And, by peppering its argument with such emotive words as "scream," and "holler," and "yell" in describing its opponent's reference to the report, the State found an effective way to catch the jurors' attention while also belittling defense counsel for voicing a legitimate concern.

Next, we acknowledge that there exists a quantum of evidence, apart from that relating to the HGN report, that illustrates appellant's guilt. Moreover, it is quite possible that the jury would have convicted appellant had the evidence now at issue not been admitted. Yet, that is not to say that the evidence of guilt was uncontradicted; it was contradicted. For instance, appellant did not exhibit slurred speech. Nor did he engage in erratic driving. So too was he able to respond to various directives from the officer and manipulate small objects like his keys. And, that the jurors were deadlocked on the issue of guilt until the trial court submitted its "Allen Charge" is further indicia suggesting that the evidence of appellant's culpability was less than overwhelming.

To this we add that while it is laudable for the State to concede error, it seems somewhat incongruous to invite like conduct in the future by simply holding that its actions

4

were harmless. Indeed, experience teaches that in the heat of battle litigants often push the envelope of propriety until they are told to stop. As the old cliche goes, "give 'em an inch and they'll take a mile." So, care should be taken to dissuade litigants from attempting to take the mile when given the inch inherent in the harmless error rule. This seems especially so in those situations were there exists a quantum of admissible evidence indicative of guilt. The presence of legitimate evidence of guilt should not be seen by the State as a way to slip into the record evidence of dubious legitimacy.

In sum, we cannot know with absolute certainty what effect, if any, the admission of the report had upon the jurors' mental processes here. Much is left to reasonable deductions and probabilities arising from the particular circumstances captured of record. And, if those circumstances prevent us from concluding, beyond reasonable doubt, that the error had no impact on the outcome, then the right course of action is to reverse the judgment and grant the State opportunity to retry the accused via a proceeding free of taint. So, because the circumstances at bar do not allow us to hold, beyond reasonable doubt, that the report had no affect on the decision to convict appellant, we reverse the judgment and remand the cause for further proceedings.[2]


                                        Brian Quinn
                                        Chief Justice

Publish.

---

[2]Our decision is not affected by the State's argument that the trial court was free to judicially note the validity of the HGN test. Even if it was so free to act, that does not mean it was entitled to comment on the weight of the evidence by informing the jury of what it could do. *See Brown v. State,* 122 S.W.3d 794, 797-98 (Tex. Crim. App. 2003). Nor does that somehow placate the lost opportunity to test the conclusion via cross-examination.