NO. 07-11-0341-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 18, 2012
_____

JUSTIN LEE SOLANO,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;

NO. 10-12-7216; HONORABLE PAT PHELAN, PRESIDING
_____

***Opinion***
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Justin Lee Solano appeals his conviction for possessing a controlled substance (methamphetamine) in an amount less than one gram. Purportedly, the trial court erred in denying both his motions 1) to suppress the evidence and 2) for new trial. We affirm the judgment.

*Issue 1 – Motion to Suppress*

As for the suppression issue, the evidence of his guilt was subject to suppression, in his view, because his "initial interaction" with the sheriff's deputy was

not supported by reasonable suspicion that crime was afoot.  In other words, the deputy "did not have reasonable suspicion to detain" him.  We overrule the issue.

Whether the trial court erred in denying a motion to suppress is determined under the standard of review in *Ford v. State,* 158 S.W.3d 488 (Tex. Crim. App. 2005).  Per that standard, we defer to the trial court's resolution of historical fact but review *de novo* its interpretation of the law.  *Id.* at 493.  So too do we look at the totality of the circumstances involved.  *Kothe v. State,* 152 S.W.3d 54, 62-63 (Tex. Crim. App. 2004).

According to the record before us, Hockley County Deputy Raul Lopez was traveling behind Tanya McDaniel as she drove down FM 168.  There was at least one other car between their vehicles.  Eventually, McDaniel pulled onto the side of the road.  After passing her, Deputy Lopez noticed appellant exit from the McDaniel car and raise the hood of the engine compartment.  This caused him to "want[] to make sure that everything was fine, everything was running," and that "they're going to get to their destination."  So, he turned his patrol unit around, drove back to where McDaniel had stopped, stopped in front of McDaniel's car, unlatched the hood of his engine compartment, and engaged his emergency lights.  The latter was done to apprise others traveling down the farm-to-market road of their presence.

Around the time the deputy arrived, appellant closed the hood of McDaniel's vehicle, walked to its passenger window, stood outside it, and began conversing with her.  At about that time, the officer exited his patrol car and directed appellant to come to him.  Appellant complied, and that apparently constituted the "initial interaction" or detention now condemned by him.  He argues that the deputy at least needed reasonable suspicion to believe crime was afoot before beckoning him over.

Irrespective of whether reasonable suspicion to detain someone exists, an officer still may temporarily detain an individual (as part of the community caretaking function) when circumstances exist allowing a reasonable person to believe that the individual is in need of help. *Wright v. State,* 7 S.W.3d 148, 151 (Tex. Crim. App. 1999). The officer's primary motive must be concern for the person's well being. *Corbin v. State,* 85 S.W.3d 272, 277 (Tex. Crim. App. 2002); *see Gibson v. State*, 253 S.W.3d 709, 714 (Tex. App.–Amarillo 2007, pet. ref'd) (stating that the community caretaking function is "totally divorced" from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute and justifies a seizure only when the officer's primary purpose was to act for the welfare of the individual in need of assistance). And, if it is determined that the officer's primary motive was to act for the welfare of someone needing help, then the court must assess the reasonableness of the officer's belief that help was needed. *Gibson v. State*, 253 S.W.3d at 714. This is done by considering four non-exclusive factors; they consist of 1) the nature and level of distress exhibited by the person, 2) the location of the person, 3) whether the person was alone or had access to assistance independent of the officer, and 4) to what extent the person presented a danger to himself or others if not assisted. *Id.* at 714-15.

As previously illustrated, the deputy testified that he returned to McDaniel's car and stopped in front of it to make sure that everything was fine and that they were going to arrive at their destination. By that time, he had seen the vehicle pull to the side of the road and appellant raise its hood. Those circumstances, coupled with the evidence of his engaging his emergency lights to warn other drivers of their presence and unlatching the hood of his own vehicle to provide McDaniel with a "boost," if needed, is more than

ample evidence upon which the trial court could conclude that the deputy was primarily motivated to stop out of his concern for the welfare of appellant and McDaniel.

That the deputy also began to wonder whether the two individuals were engaged is some sort of "disturbance," "altercation" or the like when appellant began talking to McDaniel through the window does not necessarily prevent a factfinder from concluding that the deputy's primary motive was something else. Experiencing motor vehicle problems while on the road often leads to consternation or frustration among those involved. So, wondering whether the occupants of an inoperative car sitting on the side of a road are experiencing frustration or anger would seem to be a logical, if not practical, precaution when stopping to help in such situations.

The litany of evidence we have described so far also provided ample basis for the trial court to conclude that Deputy Lopez' belief that help was needed was reasonable. At the very least it is within the realm of reasonable debate to infer from seeing a car on the side of a road with its hood up that those occupying the vehicle are experiencing car troubles. And, an officer's attempt to help in that situation would no doubt be seen as a reasonable, if not desired, response. Thus, we hold that the initial interaction or detention at issue could be justified as an instance of an officer legitimately exercising his community caretaking function. *See Wiseman v. State,* No. 02-06-021-CR, 2006 Tex. App. LEXIS 10030, at *15-16 (Tex. App.–Fort Worth 2006, pet. ref'd) (not designated for publication) (holding that the trial court could have believed the officer was primarily motivated by the community caretaking function when he made the decision to turn around and check on a vehicle that he observed parked against a curb in an apartment complex with its hazard lights on and a passenger half in and half out of the vehicle with his legs protruding).

4

*Issue 2 – Motion for New Trial*

Next, appellant claims the trial court erred in denying his motion for new trial. He believed himself entitled to same because the jury allegedly heard new evidence after it retired to deliberate. Thus, Texas Rule of Appellate Procedure 21.3(f) entitled him to a new trial.[1] We overrule the issue.

Though appellant moved for new trial, the record does not illustrate that the motion was presented to the trial court. Such is required under Texas Rule of Appellate Procedure 21.6. Thus the issue now before us was not preserved for review.[2] *See Thompson v. State,* 243 S.W.3d 774, 776 (Tex. App.–Fort Worth 2007, pet. ref'd) (holding that though the record established that appellant timely filed a motion for new trial, there was no evidence that he delivered the motion or otherwise brought it to the trial court's attention or gave the trial court actual notice of the filing, and since the mere filing of a motion is not evidence of presentation, appellant forfeited his complaints for review because he did not preserve error); *accord Guilbeau v. State,* No. 06-10-00140-CR, 2011 Tex. App. LEXIS 2872, at *5-6 (Tex. App.–Texarkana 2011, pet. ref'd) (not designated for publication) (holding the same).

Accordingly, the judgment is affirmed.

Brian Quinn
Chief Justice

Publish.

---

[1]Per Rule 21.3(f), a defendant must be provided a new trial when "after retiring to deliberate, the jury has received other evidence. . . ." TEX. R. APP. P. 21.3(f).

[2]The motion for new trial did contain a "Certificate of Presentment" which stated that "a true and correct copy of the above and foregoing has been hand-delivered to the Office for the [Court], on this day, 9/15/11." Such a certificate is not sufficient to establish presentment. *Burrus v. State,* 266 S.W.3d 107, 115 (Tex. App.–Fort Worth 2008, no pet.).