

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00069-CR

_____

JUSTIN WAYNE MURRAY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 28,414

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

# MEMORANDUM OPINION

Justin Wayne Murray was convicted by a jury of two counts of indecency with a child by sexual contact with his seven-year-old son, J.C. Murray was sentenced to twelve years' imprisonment on each count. On appeal, he argues (1) that the evidence is legally insufficient to support the jury's verdict on both counts, (2) that the trial court erred in denying his motion for mistrial based on alleged prosecutorial misconduct, and (3) that his counsel's failure to request a hearing on his motion for a new trial constituted ineffective assistance. We find that the evidence was legally sufficient to sustain Murray's convictions, that the trial court did not err in denying Murray's mistrial, and that Murray failed to establish ineffective assistance of counsel. Consequently, we affirm the trial court's judgments.

## I. Legally Sufficient Evidence Supports the Jury's Verdicts

In evaluating legal sufficiency in this case, we must review all the evidence in the light most favorable to the jury's verdicts to determine whether any rational jury could have found, beyond a reasonable doubt, that Murray was guilty of both counts of indecency with a child by sexual contact. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A person commits the offense of indecency with a child by contact if he engages in sexual contact with a child or causes a child to engage in sexual contact with him when the child is younger than seventeen years of age. TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2011). Sexual contact, as defined by the Texas Penal Code,

> means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:
> (1)    any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or
> (2)    any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

TEX. PENAL CODE ANN. § 21.11(c) (West 2011). In one count, the State alleged that Murray intentionally or knowingly caused J.C. to touch his penis with the intent to arouse or gratify his sexual desire. In the other count, the State alleged that Murray intentionally or knowingly touched J.C.'s penis with the intent to arouse or gratify his sexual desire.

Murray's mother, Joy Bradford, lived with Murray and J.C. She testified that J.C. had poor personal hygiene and that he had contracted "a pretty serious infection around the head of his penis," which was "very red and inflamed." Murray admitted that he had touched J.C.'s penis when the child was four years old, but swore that the touching occurred with the intent to

3

clean J.C., to apply ointment to the infected area, and to teach personal hygiene habits. Murray testified that J.C. never touched Murray's penis. J.C. testified at trial via closed-circuit television, but offered no testimony that supported the State's allegations.

Citing to this trial testimony, Murray argues on appeal that the evidence is insufficient to prove (1) that the child touched Murray's penis and (2) that the contact alleged in both counts occurred with the intent to arouse or gratify his sexual desire, as opposed to the intent to care for the child's health and well-being. Murray's arguments are countered by other evidence introduced at trial.

J.C. made an outcry to his first-grade teacher at Crockett Elementary School, Amanda Kilgore. Kilgore described J.C. as an outgoing and talkative child who was typically enthusiastically engaged in classroom activities. According to Kilgore, J.C. began uncharacteristically "shutting down" and isolating himself from others toward the end of the 2011–12 school year. At the end of the school day on May 17, 2012, J.C. informed Kilgore that someone was hurting him. Kilgore testified,

> I turned to him and I looked him in the eyes and I told him I was listening. Well, [J.C.] started stuttering even more, to where he couldn't speak. And I - I told [J.C.] it was going to be okay, but he could tell me anything and I wouldn't tell anybody . . . .
>
> [J.C.] went on to tell me that his - his daddy was touching him. They were - he said, Ms. Kilgore, I have to take a bath with my daddy and my daddy washes my PP and I wash his PP and then we wash our own hair. And he . . . described his daddy's PP and his PP and size, using his finger and his thumb. And he used the adjectives of squishy and hard . . . .[1]

---

[1] At trial, Kilgore could not recall whether J.C. described his own penis or Murray's penis as "squishy."

4

And [J.C.] said, yeah, me and daddy sleep together, but Ms. Kilgore he uses his manners - manners is [sic] a big thing in first grade and [Murray] says, [J.C.], will you please rub my PP.

Kilgore testified that J.C. demonstrated to her the act he performed on Murray. According to Kilgore, J.C. had a crayon in his hand and "was just going up and down . . . [a]long the length of the crayon" to demonstrate the act. She then testified that J.C. stated, "[T]his is how daddy makes me rub." After Kilgore reported the incident, J.C. was transported to the local Child Advocacy Center (CAC).

Alicia Daun, a CAC forensic interviewer, conducted an audio-/video-recorded interview with J.C. that was played for the jury without objection. During this interview, J.C. initially denied that anyone had touched or looked at his private parts. Daun asked, "Did you say anything to Ms. Kilgore at school?" In response, J.C. said, "Yeah, I told her that my dad touches my pee pee when I fall asleep." Seven-year-old J.C., who did not remember how old he was the first time Murray touched his penis, said that the first touching happened a long time ago, but that Murray had stopped touching his penis because "it didn't make me feel good and it didn't make him feel good." At the May 18, 2012, interview, J.C. stated that the last time the touching occurred was in June, but he later stated that he was four years old when it last happened.

J.C. told Daun that he sleeps in one bed with Murray and that they touch each other's penises when they are in bed.[2] J.C. added, "If I don't want to, he doesn't do it. If he doesn't do it, I don't do it. And if he wants me to I will." J.C. specified that he touches his father's penis

[2]There was conflicting evidence as to how often J.C. slept with Murray in Murray's bedroom. Bradford and Murray testified that it was rare for the child to sleep with Murray and that he slept mostly with Bradford in her bedroom. However, J.C. testified at trial that he slept mostly with his father and never with his grandmother.

underneath his father's clothes. J.C. also stated that he and Murray wash each other's penises in the shower. Using hand motions, the child demonstrated the act for the interviewer. J.C. told the interviewer that his father's penis felt "squishy," but that his penis felt hard. Later in the interview, J.C. clarified that Murray's penis transforms from "squishy" to hard.

As previously indicated, J.C.'s trial testimony matched neither his outcry statement nor his version of events related during the CAC interview. However, a recantation by a child victim does not automatically render the evidence insufficient in a sexual abuse case. *See Owens v. State*, 381 S.W.3d 696, 707–08 (Tex. App.—Texarkana 2012, no pet.). A child victim's outcry statement or audio/video-recorded statement alone can be sufficient to support a sexual abuse conviction. *See Rodriguez v. State*, 819 S.W.2d 871, 873–74 (Tex. Crim. App. 1991); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd); *Bousquest v. State*, 47 S.W.3d 131, 133, 137 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (finding child's audio/video recorded interview by CAC constituted legally sufficient evidence).

While Murray's testimony and J.C's trial testimony deny that the child contacted Murray's penis, Kilgore's testimony and J.C.'s CAC interview directly contradict Murray's position and form a sufficient basis on which the jury could have concluded that Murray caused the child to contact Murray's penis. J.C.'s statement that Murray politely asked J.C. to rub his penis demonstrates that the contact was intentionally or knowingly caused. J.C.'s demonstration with the crayon and his statements (1) that someone was hurting him, (2) that "daddy makes me rub" his penis, (3) that daddy "uses his manners" when he asks me to rub his penis, (4) that Murray's penis transforms from "squishy" to hard, and (5) that the acts stopped because it made

6

neither J.C. nor Murray feel good form a legally sufficient basis on which the jury could have concluded that Murray caused the touching to arouse or gratify his sexual desire.[3] We find that the evidence was legally sufficient to prove that Murray intentionally or knowingly caused J.C. to touch his penis with the intent of arousal or sexual gratification.

In his CAC interview, J.C., speaking in the present tense, revealed that Murray was touching his penis when they were in bed and when they were in the shower. In apparent defense of his father he continued, "If I don't want to, he doesn't do it." J.C.'s statements that someone was hurting him, that the contact stopped because it did not make them feel good, and that Murray's penis transforms from "squishy" to hard are legally sufficient, if believed by the fact-finder as they were in this case, to establish that Murray touched J.C.'s penis to arouse or gratify his sexual desire. Murray argued, however, that the contact was only to clean J.C., treat him for infection, or teach him personal hygiene, and Bradford's testimony supported this position. There was evidence of a past infection in or on J.C.'s penis, and J.C. indicated at one point that Murray last touched him when he was four years old. Yet, J.C. spoke during his CAC interview in the present tense at times and also indicated at one point that the touching last happened in June (the interview took place in May). Reconciliation of evidentiary conflicts is

---

[3]As stated in *Jones v. State*,

> Rarely will there be direct evidence of what an accused intended at the time of the incident. Thus, the fact-finder usually must infer intent from circumstantial evidence rather than direct proof. More specifically, in the context of indecency with a child, the fact-finder can infer the requisite intent to arouse or gratify sexual desire from conduct, remarks, or all the surrounding circumstances. The intent to arouse or gratify may be inferred from conduct alone. No oral expression of intent or visible evidence of sexual arousal is necessary.

*Jones v. State*, 229 S.W.3d 489, 497 (Tex. App.—Texarkana 2007, no pet.) (quoting *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd)).

solely a function of the trier of fact.  *Pierson v. State*, 398 S.W.3d 406, 421 (Tex. App.—Texarkana 2013), *aff'd*, No. PD-0613-13, 2014 WL 1375459 (Tex. Crim. App. Apr. 9, 2014); *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998).  As the judge of witness credibility, the jury was free to reject Murray's self-serving testimony, Bradford's testimony, as well as J.C.'s trial testimony.  We find that the evidence was legally sufficient to prove that Murray intentionally or knowingly touched J.C.'s penis with the intent of arousal or sexual gratification.

Because we find the evidence legally sufficient to support the jury's findings on both counts of the State's indictment, we overrule Murray's first point of error.  *See Williams v. State*, 305 S.W.3d 886, 891 (Tex. App.—Texarkana 2010, no pet); *Bousquest*, 47 S.W.3d at 133, 137.

## II.   The Trial Court Did Not Err in Denying Murray's Motion for Mistrial

"A trial court's denial of a mistrial is reviewed under an abuse of discretion standard and must be upheld if within the zone of reasonable disagreement."  *Brooks v. State*, 420 S.W.3d 337, 340 (Tex. App.—Texarkana 2014, no pet.) (citing *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010)).

During his cross-examination of Felicia White, a detective with the Greenville Police Department, Murray asked what investigative actions were taken to "rule out that [Murray] had done anything inappropriate."  "Well, I asked [Murray] would he - would he want to submit to a polygraph examination."   Murray immediately objected, the jury was dismissed, and the following colloquy ensued:

> [Defense Counsel]:   Judge, I'm going to move for a mistrial.  That was specifically brought up at the beginning.  The witnesses were supposed to be told

8

that polygraph, even the mention of it, is inappropriate. And it's not - definitely not responsive to the question that I asked, as far as investigation-wise, wanting to do a polygraph. That's not investigation and would move for a mistrial.

[State's Attorney]:    Your Honor, I wholeheartedly disagree. I believe that with the jury not here, of course, polygraph is offered in almost every one of these cases and it's offered by an investigator. It's part of an investigation.

Now, it was asked by the defense attorney. He pressed her on it, over and over and over again about - you took no other steps, nothing else - nothing else and it's leaving this false impression in the jury's mind.

Now we can strike the answer and we can have a motion or we can have an agreement that the jury disregard that answer, but to say that it's - it rises to a level of a mistrial, it certainly does not. It was not asked by me. It was asked by him.

And it was asked by him as an answer to a question he kept on pressing her about. She's done nothing else to investigate this case, Your Honor.

He's got to live with the answer when he asks a question like that.

[Defense Counsel]:    Then any question I ask her, Judge, she can respond, well, yeah, I did a polygraph, as far as investigation. They know it's inappropriate.

THE COURT:        All right. Let me sort through this this way. First of all, the motion for mistrial is denied. Secondly, the witness is instructed not to mention polygraph in any fashion, form again. Thirdly, the court will give an instruction to the jury, telling them to disregard the last answer, informing them that polygraphs are never admissible in criminal actions. And that there's nothing before - the polygraphs are often - often offered, but any results are not admissible.

After the jury entered the courtroom, the trial court instructed them to disregard White's response and stated, "[T]he taking, nontaking [sic] of a polygraph or the results of anything are inadmissible in a criminal case. So it would be irrelevant whether there was one taken or not."

9

"A trial court may not admit polygraph examination evidence or consider it for any purpose, even if the State and the defendant agree and stipulate to use the results of the polygraph examination at trial." *Buckley v. State*, 46 S.W.3d 333, 336 (Tex. App.—Texarkana 2001, pet. dism'd, untimely filed) (citing *Tennard v. State*, 802 S.W.2d 678, 683 (Tex. Crim. App. 1990); *Nethery v. State*, 692 S.W.2d 686, 700 (Tex. Crim. App. 1985); *Fernandez v. State*, 564 S.W.2d 771, 773 (Tex. Crim. App. [Panel Op.] 1978)). "When a witness gives a nonresponsive answer[4] that mentions a polygraph test, courts initially inquire into whether the results of the test were revealed." *Id.* "When the results are not revealed, there is generally no error in failing to grant a mistrial when the trial court sustains the adverse party's objection and instructs the jury to disregard the answer." *Id.* (citing *Richardson v. State*, 624 S.W.2d 912, 914–15 (Tex. Crim. App. [Panel Op.] 1981); *Peoples v. State*, 928 S.W.2d 112, 115–16 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd)).[5]

Here, White's answer[6] did not reflect whether Murray took or refused a polygraph test. Even assuming that the test was taken, White's answer did not reveal any test results. The trial

---

[4]The question was what action the witness had taken to "rule out" inappropriate conduct by Murray. While polygraph examinations (and any discussions thereof) are not admissible evidence, the officer was logically responsive to the defense attorney's question when he answered that offering the test was an effort to rule out Murray's improper touching.

[5]In circumstances not applicable here, even when the results of the polygraph test are not revealed, there still may be error warranting reversal (1) if the question asked exhibited bad faith by being designed to elicit that a polygraph was taken or what the results of that polygraph were, and (2) if the effect of the evidence is to impeach the defendant's defensive theory or to bolster the State's case. *Buckley*, 46 S.W.3d at 337 (citing *Sparks v. State*, 820 S.W.2d 924, 927–30 (Tex. App.—Austin 1991, no pet.)).

[6]White's answer was in response to a question by Murray, not the State. Murray argues that the answer constituted prosecutorial misconduct. Prosecutorial misconduct arose, if at all, from the failure to adequately instruct the witnesses to refrain from mentioning the subject of a polygraph test. However, at the beginning of the proceeding, the State agreed not to mention polygraph testing and said, "The witnesses aren't going to bring that up." Therefore,

court sustained Murray's objection, instructed the jury to disregard White's answer, and further instructed that testimony relating to polygraph testing, or the failure to take a polygraph, was inadmissible and irrelevant. We ordinarily presume that a jury follows cautionary instructions from the trial court. *Archie v. State*, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011). The trial court properly instructed the jury; it did not abuse its discretion in denying Murray's motion for mistrial. *See Buckley*, 46 S.W.3d at 337; *Kugler v. State*, 902 S.W.2d 594, 595 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd); *Garcia v. State*, 907 S.W.2d 635, 639 (Tex. App.—Corpus Christi 1995), *aff'd*, 981 S.W.2d 683 (Tex. Crim. App. 1998); *Barker v. State*, 740 S.W.2d 579, 582–83 (Tex. App.—Houston [1st Dist.] 1987, no pet).

We overrule Murray's second point of error.

## III.   Murray Did Not Establish Ineffective Assistance of Counsel

Murray's counsel filed a motion for new trial. Murray argues that his counsel rendered ineffective assistance[7] because (1) the motion omitted a certificate of presentment and (2) counsel's failure to properly present the motion for new trial and request a setting "immeasurably compromised" his appeal.

Here, the motion for new trial contains a certificate of presentment, in which Murray's attorney certified that "a true and correct copy of the above and foregoing has been hand-delivered to the Office for the 354th Judicial District Court of Hunt County, on this day, April 19, 2013."

---

it appears that the State provided its witnesses, including White, with appropriate caution not to mention polygraph testing, and nothing suggests otherwise.

[7]The Sixth Amendment to the United States Constitution guarantees the right to reasonably effective assistance of counsel in criminal prosecutions. *See* U.S. CONST. amend. VI.

The Texas Court of Criminal Appeals has held that "[a] motion for new trial must be 'presented' to the trial court." *Gardner v. State*, 306 S.W.3d 274, 305 (Tex. Crim. App. 2009). "The defendant must put the trial judge on actual notice that he desires the judge to take some action, such as making a ruling or holding a hearing, on his motion for new trial." *Id*. "'Presentment' must be apparent from the record, and it may be shown by such proof as the judge's signature or notation on the motion or proposed order, or an entry on the docket sheet showing presentment or setting a hearing date." *Id.* In *Gardner*, the Texas Court of Criminal Appeals noted that the motion for new trial was not delivered "personally to the trial judge" and concluded the motion was not properly presented. *Id.*[8]

However, a failure to request and set a hearing on a motion for new trial does not automatically constitute ineffective assistance of counsel. *Landers v. State*, 110 S.W.3d 617, 625 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). To show ineffective assistance of counsel, a defendant must demonstrate both (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984); *Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009). Failure to make either one of these required showings defeats an ineffectiveness claim.

---

[8]Murray alleges, and the State does not dispute, that trial counsel failed to properly present the motion for new trial to the trial court. Consequently, the briefs do not address the requirements necessary to present the motion to the trial court. Several courts of appeal have concluded that counsel's certification that the motion for new trial was hand delivered to the judge's office is an insufficient presentment of the motion. *Solano v. State*, 371 S.W.3d 593, 596, n.2 (Tex. App.—Amarillo no pet.); *Campos v. State*, No. 11-11-00074-CR, 2013 Tex. App. LEXIS 13749 (Tex. App.—Eastland Nov. 7, 2013, pet. ref'd) (not designated for publication). As the parties have done, we will assume, without deciding, that the presentment of the motion for new trial was insufficient.

*See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006).

We begin our analysis with the rule that any allegation of ineffectiveness of counsel must be firmly founded in the record. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Wallace v. State*, 75 S.W.3d 576, 589 (Tex. App.—Texarkana 2002), *aff'd*, 106 S.W.3d 103 (Tex. Crim. App. 2003). From the record received by this Court, which does not include an explanation of counsel's reasoning, Murray bears the burden of proving that counsel was ineffective by a preponderance of the evidence. *Goodspeed*, 187 S.W.3d at 392; *Thompson,* 9 S.W.3d at 813; *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984). Rarely will a reviewing court be provided a record on direct appeal that allows for a comprehensive evaluation of the merits of an ineffective assistance of counsel claim. *Thompson*, 9 S.W.3d at 813. "In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect" the reasoning of trial counsel. *Id.* at 813–14.

Aside from generalized complaints, Murray claimed in his motion for new trial that the trial court erred in failing to grant a mistrial as a result of White's testimony referencing a polygraph examination. A defendant is entitled to a hearing on his motion for new trial if the motion and accompanying affidavits "rais[e] matters not determinable from the record, upon which the accused could be entitled to relief." *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003) (quoting *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993)). To be sufficient to entitle the defendant to a hearing, the motion for new trial and accompanying

13

affidavits "must merely reflect that reasonable grounds exist for holding that such relief could be granted." *Id.* (quoting *Martinez v. State*, 74 S.W.3d 19, 22 (Tex. Crim. App. 2002)). The purpose of the hearing is to give the defendant an opportunity to fully develop the matters raised in his motion. *Id*.

Here, counsel did not testify, and there is no explanation for the failure to properly present the motion for new trial or to request that motion be set for a hearing. Because we have no record of counsel's reasoning, it is entirely possible that counsel carefully researched the issues raised by Murray at trial and determined, as we did, that Murray's arguments (1) require no further record development and/or (2) would ultimately be unsuccessful. Thus, counsel could have made a calculated and reasoned decision that Murray would not be entitled to a motion for new trial and that a hearing on the motion would be futile. *See Landers*, 110 S.W.3d at 625 (refusing to speculate why counsel did not obtain hearing on motion for new trial); *see also Todd v. State*, 242 S.W.3d 126, 135 (Tex. App.—Texarkana 2007, pet. ref'd).

Because we can envision reasons for counsel's failure to secure a hearing on Murray's motion for new trial, we find that Murray failed to establish the first prong of the *Strickland* test. Further, although required by *Strickland*'s second prong, Murray's brief is devoid of any explanation of why counsel's failure to secure a hearing prejudiced him, aside from conclusory allegations that he was harmed. Since neither *Strickland* prong has been proven, we overrule Murray's last point of error.

14

## IV.  Conclusion

We affirm the trial court's judgment.

Jack Carter
Justice

Date Submitted:     March 17, 2014
Date Decided:       May 6, 2014

Do Not Publish