**REVERSE and REMAND and Opinion Filed August 16, 2024**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-21-00770-CR**

_____

**MARLON JUAN LALL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 382nd Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause No. 2-21-0335**

# MEMORANDUM OPINION ON REMAND

Before Justices Pedersen, III, Garcia, and Breedlove[1]
Opinion by Justice Garcia

This appeal is before the Court on remand from the Texas Court of Criminal Appeals. *See Lall v. State*, 686 S.W.3d 766 (Tex. Crim. App. 2024) (per curiam). Appellant was convicted of possession with intent to deliver more than 4 but less than 200 grams of methamphetamine and sentenced to forty years in prison. In his first appeal to the Court, appellant argued, inter alia, that the trial court's denial of his motion to suppress was erroneous because the police lacked reasonable suspicion

---

[1] Justice Lana Myers was a member of the panel on original submission. Justice Myers has now retired. Justice Maricela Breedlove has succeeded Justice Myers as a member of the panel and has reviewed the briefs and the record.

to prolong the detention.[2] We concluded the officer had reasonable suspicion for the prolonged detention.

Our reasonable suspicion analysis relied in part on *Wade v. State*, 422 S.W.3d 661, 674 (Tex. Crim. App. 2013) for the proposition that a citizen's refusal to cooperate with police during a consensual encounter could be a factor in determining whether an investigative detention was justified, so long as it was not the triggering fact. *See Lall v. State*, 656 S.W.3d 830, 844 (Tex. App.—Dallas 2022), *vacated and remanded*, 686 S.W.3d 766 (*citing Wade*, 422 S.W.3d at 674). Accordingly, we considered appellant's consent to search his person but not his vehicle as part of the totality of the circumstances in the reasonable suspicion calculus. *Id.*

The Texas Court of Criminal Appeals granted appellant's petition for discretionary review to consider whether a refusal to consent to search may be considered in determining reasonable suspicion and held that "a refusal of consent to search is not indicium of criminal activity." *Lall*, 686 S.W.3d at 768. In so concluding the Court stated, "Our observation that the lawful refusal to consent could not be the prominent factor in the reasonable suspicion calculus was not necessary to our holding [in *Wade*] and we expressly disavow it." *Id*. The Court vacated our judgment and remanded the cause to this Court to consider reasonable

---

[2] Appellant also argued: (i) the police lacked reasonable suspicion to support the initial detention, (ii) the evidence was insufficient to establish that he knowingly possessed methamphetamine and (iii) the trial court erred by overruling his improper jury charge objection, but those issues are not before us on remand.

–2–

suspicion after excluding appellant's refusal to consent to search from the analysis. *Id*. at 768.

Having considered the totality of the circumstances in this context, we conclude the officer lacked reasonable suspicion to prolong the detention after the purpose of the stop had concluded. Therefore, the trial court erred in denying the motion to suppress. We further conclude that the suppression ruling caused appellant harm. Accordingly, we reverse the trial court's judgment and remand to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND

The events leading to appellant's arrest and conviction occurred on August 12, 2020. Appellant was observed wearing a black fanny pack across his chest, loading things into his vehicle at a house under surveillance for suspected narcotics activity. After appellant left that location, Officer Jordan Pope, accompanied by his canine partner Czar, stopped appellant for having an obscured license plate and following too closely.[3] Appellant consented to a pat-down of his outer clothing and cooperated with Officer Pope during the encounter.

After Officer Pope checked appellant's identification and registration and confirmed that appellant had no outstanding warrants, he gave appellant a verbal warning for the traffic violations. He then requested consent to search the vehicle,

---

[3] We do not detail the facts leading to the stop because the initial detention is not at issue in this appeal.

which appellant declined. Officer Pope told appellant he was going to have his canine perform an open-air sniff around the vehicle and if the dog did not alert to the scent of narcotics, appellant would be free to go.

The open-air sniff occurred immediately. Czar alerted to the presence of narcotics in the vehicle, and a search ensued.

The search uncovered a black bag (later confirmed to be the fanny pack the surveillance officer observed) with a sunglass case containing methamphetamine. Other items found in the vehicle included marijuana, drug paraphernalia, a scale, small baggies, and a stolen firearm.

Appellant was charged with the manufacture or delivery of a controlled substance in Penalty Group 1 in an amount of four grams or more but less than 200 grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (a), (d). Appellant filed motions to suppress the evidence arguing there was no reasonable suspicion for the stop or for his continued detention after the stop concluded. The motions were carried with the trial and argued to the court after the State rested. The trial court denied the motions.

The jury found appellant guilty of the charged offense. During the punishment phase, appellant pleaded "true" to an enhancement and the jury assessed punishment at forty years in prison. Judgment was entered on the jury's verdict.

Appellant moved for a new trial and requested findings of fact and conclusions of law on the suppression rulings. The trial court made findings and conclusions as requested.

On original submission, a majority of this Court affirmed the trial court's judgment. *See Lall*, 656 S.W.3d at 848. Justice Pederson dissented. *See Lall*, 656 S.W.3d at 848–849 (Pedersen, J. dissenting). The Court of Criminal Appeals granted appellant's petition for review, vacated this Court's judgment, and remanded for our consideration of reasonable suspicion to prolong the detention with refusal of the consent to search excluded from the analysis. *See Lall*, 686 S.W.3d at 766.

## II. ANALYSIS

### A. Standard of Review

In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *State v. Hardin*, 664 S.W.3d 867, 871–72 (Tex. Crim. App. 2022); *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016). We give almost total deference to the trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex. Crim. App. 2011); *Scott v. State*, No. 05-22-00839-CR, 2024 WL 1298098, at *1 (Tex. App.—Dallas Mar. 27, 2024, no pet.) (mem. op., not designated for publication). We also defer to the trial court's findings on questions of fact and

mixed questions of law and fact that turn on the weight or credibility of the evidence. *Hardin*, 664 S.W.3d at 871–72; *Brodnex*, 485 S.W.3d at 436.

We review de novo the trial court's determination of pure questions of law, the application of the law to established facts, and the legal significance of those facts. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018*); see also Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). We also review de novo mixed questions of law and fact that are not dependent upon credibility determinations. *Brodnex,* 485 S.W.3d at 436. Whether the facts known to the officer rise to the level of reasonable suspicion is a mixed question of law and fact that we review de novo. *State v. Mendoza*, 365 S.W.3d 666, 669–70 (Tex. Crim. App. 2012) (citing *Ornelas v. United States*, 517 U.S. 690, 696, 699 (1996)).

We review a trial court's ruling on a motion to suppress in the light most favorable to the trial court's decision, regardless of whether the trial court granted or denied the motion. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011). When, as in this case, the trial court makes explicit findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Hardin*, 664 S.W.3d at 872; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We will sustain the trial court's ruling if it is supported by the record and if it is correct under any applicable legal theory. *Lerma*, 543 S.W.3d at 190; *Najar v. State*, 618 S.W.3d 366, 373 (Tex. Crim. App. 2021).

**B.      Reasonable Suspicion to Prolong the Detention**

The Fourth Amendment to the United States Constitution guarantees protection against unreasonable searches and seizures. U.S. CONST. amend. IV; *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). These constitutional protections extend to investigatory stops of persons or vehicles that fall short of a traditional arrest. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Warrantless traffic stops by law enforcement personnel to address traffic violations constitute seizures within the meaning of the Fourth Amendment and are tantamount to temporary detentions; therefore, such traffic stops must be justified and supported by reasonable suspicion. *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *see also Derichsweiler*, 348 S.W.3d at 914. This principle controls "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

"The touchstone of the Fourth Amendment is reasonableness." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). Thus, "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" *United States v. Jacobsen*, 466 U.S. 109, 124 (1984) (quoting *United States v. Place*, 462 U.S. 696, 722 (1983) (Blackmun, J., concurring)). Specifically, "[a] seizure that is justified solely by the interest in

–7–

issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

The United States Supreme Court addressed the use of a canine sniff during a traffic detention in *Rodriguez v. U.S.*, 575 U.S. 348, 354 (2015). In *Rodriguez*, an officer lawfully stopped a vehicle with two occupants for driving on the shoulder. *Id*. at 351. The officer ran a records check on the driver, issued a warning ticket, and returned the driver's documents. Put simply, the officer had "[taken] care of all business" related to the traffic violation yet did not consider the defendant "free to leave." *Id.* at 352. Instead, the officer held the defendant for an additional seven or eight minutes until a canine unit arrived, and a search ultimately uncovered methamphetamine in the vehicle. *Id.* The Supreme Court granted certiorari to resolve "whether police routinely may extend an otherwise-completed traffic stop, *absent reasonable suspicion*, in order to conduct a dog sniff." *Id*. at 353 (emphasis added).

The *Rodriguez* court began by examining the "mission" of a traffic stop:

> Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop. [Citation]. Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. [Citations.] These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly. [Citations.]

*Id.* at 355. The Court then concluded that a dog sniff was not one of these ordinary inquiries: "Lacking the same close connection to roadway safety as the

ordinary inquiries, a dog sniff is not fairly characterized as part of the officer's traffic mission." *Id.* at 356. Authority for the traffic stop ends "when tasks tied to the traffic infraction are—or reasonably should have been completed." *Id*. at 354. Therefore, the Court held that, absent reasonable suspicion of criminal activity, the police could not prolong a traffic stop to conduct a dog sniff. In so concluding, it rejected the government's argument that an officer "may 'incremental[ly]' prolong a stop to conduct a dog sniff so long as the officer is reasonably diligent in pursuing the traffic-related purpose of the stop, and the overall duration of the stop remains reasonable." *Id.* at 357. The Court vacated the order denying the motion to suppress and remanded to the Eighth Circuit to determine "whether reasonable suspicion of criminal activity justified detaining Rodriguez beyond completion of the traffic investigation." *Id*. at 356–60.

Here, Officer Pope had issued a verbal warning about the traffic violation but did not tell appellant he was free to go. He requested permission to search the vehicle, which appellant declined. The canine sniff occurred immediately. As *Rodriguez* instructs, however, the critical question is not whether the dog sniff occurs before or after the officer issues a ticket . . . but whether conducting the sniff 'prolongs' . . . the stop." *Rodriguez*, 575 U.S. at 357.

There is no dispute that the purpose of the initial stop (a traffic investigation) had concluded in this case and the canine sniff prolonged the stop. A traffic stop is generally resolved after the officer learns that the driver has a valid license, no

outstanding warrants, and the car is not stolen. *Kothe v. State*, 152 S.W.3d 54, 63–64 (Tex. Crim. App. 2004). Unless there is another proper basis for an investigative detention, the traffic stop must end and the driver must be allowed to leave. *Rodriguez*, 575 U.S. at 355; *see also Moss v. State*, No. 05-22-00949-CR, 2023 WL 4247367, at *3 (Tex. App.—Dallas June 29, 2023, no pet.) (mem. op., not designated for publication). Once the reason for the stop is satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997).

An officer may request consent to search a vehicle after the purpose of the stop has been accomplished, as long as the request is reasonable under the circumstances and the officer has not conveyed a message that compliance with the officer's request is required. *Simpson v. State*, 29 S.W.3d 324, 328 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *see also Smith v. State*, No. 05-11-01675-CR, 2013 WL 3929224, at *4 (Tex. App.—Dallas Jul. 26, 2013, no pet.) (mem. op., not designated for publication). But if consent is refused, the officer must have reasonable suspicion to continue the detention. *Simpson*, 29 S.W.3d at 328.

The State argues three factors support the trial court's conclusion that there was reasonable suspicion for the continued detention: (i) appellant's presence at a

residence where narcotics activity was suspected, (ii) appellant's inability to produce his driver's license, and (iii) appellant's "extreme nervousness."[4]

The parties make much of the caution that courts should not engage in a "divide and conquer" analysis. *See Arvizu v. U.S.*, 534 U.S. 266, 273 (2002). We look to the totality of the circumstances to determine whether a detaining officer had a particularized and objective basis for suspecting legal wrongdoing. *Ramirez-Tamayo*, 537 S.W.3d at 36. Our examination of the factors individually is only to assess the relative strength of their inclusion in the totality collective. *See District of Columbia v. Wesby*, 138 S.Ct. 577, 588 (2018); *see also Furr v. State*, 499 S.W.3d 872, 880 n.8 (Tex. Crim. App. 2015) (courts consider cumulative force of all the circumstances).

We begin with appellant's inability to produce his driver's license. When asked to produce his license, appellant requested permission to look for his wallet. He was allowed to do so, but was unable to locate his wallet in the front seat of the car. Nonetheless, appellant gave the officer his name, date of birth, and driver's license number. When appellant asked that he be allowed to exit the vehicle and look

---

[4] The State relies on conclusion of law #3 to support its argument. That conclusion states: "The evidence supported Officer Pope's reasonable suspicion that criminal activity had or was occurring on the part of the defendant *at the time of the stop*." (Emphasis added). Our inquiry, however, is not whether the initial detention was justified, but rather, whether reasonable suspicion existed to prolong the stop after the purpose of the stop concluded. We therefore consider the State's three reasonable suspicion factors in the context of the trial court's fourth conclusion of law, which stated that "Officer Pope's detention of the defendant for the purpose of the drug sniff by his dog was reasonable under the circumstances."

for his wallet in the back, Officer Pope allowed him to do so. Officer Pope testified that appellant appeared to be looking for the wallet. Appellant patted his clothes and areas of the vehicle, and appeared to look in the back. Officer Pope later testified, however, that appellant didn't appear to look for anything in the back of the vehicle, but "was just standing back there."

It is unclear whether Officer Pope was able to run a license check from the number appellant provided or from information obtained from another source. But the dashcam video reflects that Officer Pope was able to provide a license number to dispatch. Further, the record reflects that Officer Pope had sufficient information to determine that appellant had no outstanding warrants.

The State cites cases outside this jurisdiction to argue that failure to produce vehicle ownership information and proof of authority to operate the vehicle may contribute to the formation of an objectively reasonable suspicion. *See United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999). This rationale is not persuasive.

Officer Pope did not testify that appellant was unable to provide vehicle ownership information or his driver's license. He also did not testify that he found it suspicious that appellant was unable to locate his wallet. Instead, that testimony was offered to explain why Officer Pope believed appellant was nervous. Specifically, Officer Pope said that appellant appeared nervous because [when looking for his wallet], he was "kind of aimlessly touching areas, not really finding what he's looking for."

The addition of the second factor — "extreme nervousness"— adds little to the calculus. It is well-established that nervousness alone does not establish reasonable suspicion. *See Hamel v. State*, 390 S.W.3d 302, 308 (Tex. Crim. App. 2012). Likewise, it is a weak indicator of hidden narcotics. *See McQuarters v. State*, 58 S.W.3d 250, 257 (Tex. App.—Fort Worth 2001, pet. ref'd). As the Court of Criminal Appeals has observed:

> . . . in this day and time that when a citizen is suddenly facing an imminent confrontation with police officers for unknown reasons, most citizens with nothing to hide will nevertheless manifest an understandable nervousness in the presence of the officer. Not only the guilty, but the not guilty as well, will react much the same as the outside passenger did in this instance, i.e., exercising a natural impulse. Thus, the appearance of being nervous is as consistent with a person being guilty of having committed or preparing to commit a criminal wrong as with a person not being guilty of anything more than being in the wrong place at the wrong time.

*Glass v. State*, 681 S.W.2d 599, 602 (Tex. Crim. App. 1984); *see also Guy v. State*, No. 05-07-60733-CR, 2008 WL 3984051 at \*3 (Tex. App.—Dallas Aug. 28, 2008, pet. ref'd) (mem. op., not designated for publication). Nonetheless, nervousness may be considered in combination with other factors. *Hamal*, 390 S.W.3d at 308.

Officer Pope testified that he believed appellant was nervous because of labored breathing, the "impulsive" lighting of a cigarette, and a pounding carotid artery in his neck. Officer Poe explained that a pounding artery "typically happens in signs of high blood pressure." The prosecutor then asked, "Would that be a sign

of nervousness as well?" The officer responded, "Typically, high blood pressure is a sign of nervousness."[5]

Notably, Officer Pope testified only that appellant appeared to be nervous "above and beyond" what he typically "observes in the motoring public." He did not characterize this as "extreme nervousness." Moreover, the dashcam video of the encounter is problematic.

Deference is due only when the trial court's rulings are supported by the record. *See Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012). When there is indisputable visual evidence, trial court findings inconsistent with that evidence may be disregarded. *Id.*

Videotape evidence is rarely indisputable. *State v. Tabares*, No. 08-17-00175-CR, 2019 WL 2315004, at *6 (Tex. App.—El Paso May 22, 2019, no pet.) (mem. op., not designated for publication). Although we may review "indisputable visual evidence contained in a videotape" de novo, we must defer to "the trial court's factual findings on whether what a witness actually saw was depicted on a videotape . . . ."*State v. Duran*, 396 S.W.3d 563, 570–571 (Tex. Crim. App. 2013). "Indisputable visual evidence" is "conclusive evidence that does not pivot on an evaluation of credibility and demeanor." *Miller*, 393 S.W.3d at 264.

---

[5] Officer Pope also acknowledged that, in addition to high blood pressure, a pulsing artery could result from low body fat. He further agreed that labored breathing could result from smoking.

We defer to the trial court's finding, based on Officer Pope's testimony, that appellant appeared to be nervous. But the video does not support a finding that appellant was "extremely nervous."[6] The video shows that appellant appears calm and collected throughout the encounter. Pope's inquiries are answered in an even tone. The pulsing artery is not visible, nor is there discernable labored breathing. Appellant does pat around the seat of the vehicle when looking for his wallet, but his movements are not frantic. And while appellant smokes a cigarette after exiting the vehicle, he was also smoking when he was pulled over, and Officer Pope agreed that citizens frequently smoke cigarettes during police encounters.

Next, we add appellant's presence at a suspected drug house to the equation. The trial court found:

> Before making the stop, Office[r] Pope had received information from the Rockwall Police Department that the Defendant, who was driving a Mercedes SUV with a temporary license tag 7713 5T2, had just been present at a residence where activity involving illegal narcotics was suspected.

Sergeant Lutes, a sergeant with the narcotics unit of the Rockwall Police Department, testified that on the afternoon in question he was conducting surveillance or spot checks on various houses suspected of supplying narcotics:

> So part of one of the responsibilities that we would do is we would do what we would call spot-checking. We would have intelligence about various houses that may or may not end up being source of supply for narcotics. So we would either hear through an informant, a Crime Stopper tip, through anonymous callers that, hey, this house is selling

---

[6] The State offers no authority to explain what constitutes "extreme" nervousness, but urges nonetheless that it should be afforded more weight.

drugs. So we would start spot-checking that house. We would drive by in plain vehicles at various times of the day and night to see what vehicles are coming, going, is there heavy traffic there, who is associated with that house, and how does that play into any other ongoing investigations we may have, or is it a new operation.

The Sergeant explained that while surveilling a house located on FM 550, he saw a gold Mercedes pull into the driveway. The driver, later identified as appellant, got in and out of the vehicle several times and put several things in the back of the vehicle. Appellant was wearing a black fanny pack across his chest.

When appellant left the residence, he "pulled almost entirely out in the road and then backed up into the driveway." Sergeant Lutes described this activity as a "heat run," used to detect movement in surrounding houses or surveillance.

Sergeant Lutes called for assistance, and two detectives, as well as Officer Pope and Czar, followed appellant and stopped him for following too closely and having an obstructed plate.

Additional facts coming to an officer's attention during a stop may justify further investigation. *Razo v. State*, 577 S.W.2d 709, 711 (Tex. Crim. App. [Panel op.] 1979); *see also McNabb v. State*, 07-19-00225-CR, 2020 WL 4689850, at *3 (Tex. App.—Amarillo Aug. 12, 2020, pet ref'd) (mem. op., not designated for publication); *State v. Martinez*, 638 S.W.3d 740, 750–51 (Tex. App.—Eastland 2021, no pet.). But here, appellant's presence at the suspected drug house was known to Officer Pope when he initiated the stop. The record does not reflect that any additional facts to support reasonable suspicion of a narcotics violation were

discovered during the stop. Indeed, Officer Pope agreed on cross-examination that when the traffic investigation concluded, there were "zero indicators" that appellant had drugs in his vehicle.

Considering the foregoing reasonable suspicion factors in totality, we conclude the factors do not constitute specific articulable facts that, combined with inferences therefrom, would reasonably lead the officer to conclude that appellant was, had been, or soon would be engaging in criminal activity. *See Jagnathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015). Therefore, the continued detention after the stop concluded was constitutionally impermissible, and trial court erred by denying the motion to suppress.

## C.     Did the Suppression Ruling Cause Appellant Harm?

Having concluded that the suppression ruling was erroneous, we next consider whether the trial court's ruling caused appellant harm. When the trial court erroneously denies a motion to suppress and admits evidence obtained in violation of the Fourth Amendment, that error is subject to a harm analysis. *See* TEX. R. APP. P. 44.2(a); *Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001); *see also Marcopoulos v. State*, 548 S.W.3d 697, 707 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (appellate court must determine whether trial court's erroneous denial of motion to suppress harmed defendant). We must reverse the trial court's judgment of conviction unless we determine "beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a);

*see also Neal v. State*, 256 S.W.3d 264, 284 (Tex. Crim. App. 2008). In applying the harmless-error test, the primary question is whether there is a "reasonable possibility" that the error might have contributed to the conviction. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (internal quotations omitted).

We are directed that our harm analysis should not focus on the propriety of the outcome of the trial. Instead, we must calculate, as much as possible, the probable impact of the evidence on the jury in light of the existence of other evidence. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). We "should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment," and if applicable, we may consider the nature of the error, the extent that it was emphasized by the State, its probable collateral implications, and the weight a juror would probably place on the error. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011). Error does not contribute to the conviction or punishment if the jury's verdict would have been the same even if the erroneous evidence had not been admitted. *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007).

Here, the evidence obtained as a result of the illegal prolonged detention formed the basis for appellant's conviction. As a result, the error cannot be harmless. *See Gibson v. State*, 253 S.W.3d 709, 717 (Tex. App.—Amarillo 2007, pet. ref'd);

*see also Cox v. State*, No. 05-14-00553-CR, 2015 WL 1540782, at \*6 (Tex. App.—

Dallas Apr. 1, 2015, no pet.) (mem. op., not designated for publication).

We reverse the trial court's judgment and remand the case for further

proceedings consistent with this opinion.

/Dennise Garcia/
DENNISE GARCIA
Do Not Publish                     JUSTICE
TEX. R. APP. P. 47.2(b)
210770F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MARLON JUAN LALL, Appellant

No. 05-21-00770-CR  V.

THE STATE OF TEXAS, Appellee

On Appeal from the 382nd Judicial
District Court, Rockwall County,
Texas
Trial Court Cause No. 2-21-0335.
Opinion delivered by Justice Garcia.
Justices Pedersen, III and Breedlove
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.

Judgment entered August 16, 2024